Your Honors, final case of the morning, call 211-1303, Keisha Blaskow et al. v. Associated Banc-Corp et al. On behalf of the Appellant, Mr. Stuart Galesburg. On behalf of the Attorneys, Mr. Mark McKenzie. Mr. Galesburg. Good morning, Your Honors. My pleasure to appear before the Senate of the Court. Mr. Galesburg. This case is a little bit unique in the facts and in the law. And basically it goes to the mandated, federally mandated minimum security requirements under the Bank Protection Act. Mr. Galesburg, you acknowledge that your client has no action per se. She can't file for a violation of that. But you're using that to do what? I'm emphasizing that and pled that and exhibit the reports of that to show what a federally insured, mandated, regulated bank must do, must do, in facing a $100 a day penalty if they don't do it. They must do this to deter bank robberies. If someone comes in with automatic assault weapons, you're not going to prevent them. It's not there to prevent robberies. It's there to deter robberies. It's not there to protect against robberies. It's there to preserve disorder. I think it was Mayor Daley. It's not to preserve. What did he say? It's not to preserve order. It's to preserve disorder. I don't know. But anyway, yes, I understand what you're saying. So if I may say why I'm using this. Because the case of Burkow was a defense relies on a trial court, and this court ruled in Burkow that there was no federal mandate, a pizza place versus a bank where people conduct business where there's $75,000 to $100,000 in cash, no security guard, two female tellers, money dropped off the edge. The bank was robbed three times, so 608 and 09. We're kind of aware of the facts, Counsel. We're called a hot court. That means that we've all read the briefs. One of us has read the record, or one of the clerks has read the record. And we're more interested in applying your argument to the law and the facts in that regard. Would you agree that negligence is not within the purview? Negligence would be an exclusive remedy. You could not have a workman's comp case and file an action in negligence. Okay. Now, would you also agree that Willful and Wanton probably is covered by a workman's comp claim? Yes, I would. So, essentially, your argument is that this is an intentional tort. Outrageous. Now, here's outrageous conduct that I pled, and I was never allowed in discovery to determine if the security reports that are mandated to be prepared by the home office security officer and signed off by the board of directors of the bank for each annually and for especially in 06 after the first bank robbery. What did they do in the means of minimum security to deter a second bank robbery? And even the bank expert that I retained, Don Coco. Well, there's something called malfeasance, misfeasance, and nonfeasance. Okay. And nonfeasance is usually deemed to be negligence because it's not doing something it should have done. Misfeasance means that you did something you should have done, but you didn't do it the right way. And malfeasance suggests that there's some outrageous or willful or wanton aspect to it. But all those don't necessarily establish intent because there is no crime for negligent battery. There's no crime for willful and wanton battery. There's only a crime for battery, and that's because supposedly you've done it in an intentional manner or you've done it intentionally. There's a mens rea. And so for us to rule in your favor, we have to determine whether or not as a matter of law, there is a mens rea here that results in the injury that you claim your client's entitled to damage is approximately caused. And when you say outrageous, you really seem to be talking about conduct that only indirectly affected your client. It wasn't the bank or the bank's officers or the security guard that wasn't there that hit your client. How do you get around the intentional aspects of essentially a battery? Okay. The language in the Supreme Court cases in Jablonski that were cited, when the court says, one, the alter ego of the corporation, meaning the bank security officer who puts down, who places a security program before the board of directors, and the board of directors has to approve that. If after one bank record, and we don't know what's on those forms, but looking, having the bank security expert look at the bank and see and hear from the plaintiff that she asked for, that the bank lacked security, not knowing there were two prior bank robbers, and it fell on deaf ears. And the bank expert, not the plaintiff, not me, the bank expert said that it's custom, it's full knowledge in the bank security officers who create these security plans that if they don't implement minimum security measures or more, like a silent alarm, like an exploding die pack, like when they pick up money out of a certain drawer, a silent alarm goes to the police station, like their digital cameras. They had VHS cameras. You're alleging that the bank did not provide your client a safe place to work. That's one of the allegations. After two prior robberies. Right, and also that they violated these federal safety guidelines or regulations, correct? Yes. Well, then respond to this language out of the Copas case that says that willfully failing to furnish a safe place to work, or even willfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of its accidental character. Respond to that statement from Copas. I would say that because it's a bank where people go in to be safe and the public goes in to be safe, the employees work there to be safe. They're trained, if there's a bank robbery, what to do. But the bank, this bank is a $23 billion asset bank. For whatever reason, it appeared for cost, they do not put in minimum security measures. All VHS cameras. So if this was a movie theater, this lawsuit wouldn't fly, you'd agree with that? As opposed to a bank? If this was a bank. But if this was a movie theater as opposed to a bank, then this lawsuit would, it was appropriately dismissed. I'd have to know more facts as to what happened in that bank where, not bank, but the movie theater, where they questioned the security of a door, the perpetrator coming in through a door that should have been locked. That, I would say, did not arise in this. There's no regulations that the door had to be locked. That's why I brought in the Bank Security Act, as to what is mandated for banks by the higher ups, by top management. And when it's not just a safe place to work, it's judicial public policy is involved here. A strong degree of judicial public policy. We had a bank robbery. You just had a bank robbery 95 miles from Indiana into Elgin. If there was a live feed camera in that bank, a silent alarm, the police would have been there in minutes. They would have known what the vehicle looked like. Would have never gotten it 95 miles from there. But it would have stopped the battery committed by the robber on your client? No. But these robbers are out there. They're still at large. The clients in that, we have a victim program. They may have been waiting outside the bank, not so there wouldn't be any shooting if they were armed. Because they didn't show any weapons. They were just masked. And these are professional bank robbers. They're still at large. These aren't rookies. These aren't just some walk-in. And the way this was found, I found this just in a simple Google search on this bank. Robbers can just look to see what banks are robbing people. The bank experts said, if a bank's robbed once, it's going to be robbed a second time. It's going to be robbed a third time. And one of the cases I cited in the trial court is a Florida case. And it went up twice. It's 485-2-893-1986. Stata-Sullivan versus this time, the second time they joined the board of directors. But it was brought in gross negligence. That was the law. That's what they had to do there. And they allowed this the second time. They allowed us to go through and permeate the exclusive remedy and not be a bar to the case. You're not in any way alleging or pleading that the bank had an obligation to tell your client that it had previous bank robberies, are you? No, I'm not pleading that. I'm not pleading that because the bank, from what I understand, they generally get rid of people that know anything about the bank robbery. For whatever reason, they seem to get rid of them. And so there's new employees each time around. I'm not pleading that. Although you said you didn't get discovery, do we know from this record that there were no safety issues implemented? I mean, there's no minimum security. Good question. The plaintiff is pled, had training under the Bank Protection Act about bank security measures and what to do during a bank robbery. Basically, follow orders, don't get shot, don't start any trouble, don't call the police. That's why a silent alarm, no one knows the police are being called. Just silent. But I am, I'm not, what was your question? Well, the issue is, do we know from this record that no safe, minimum safety provisions were implemented? Does she know there wasn't a silent alarm? She raised issues that there were not minimum security measures implemented. She had learned from another bank. And the bank security guard in his affidavit stated that. One of the problems I raised in my brief, or reply brief, is that in a 2-6-15 combined motion to dismiss, all facts are to be accepted, as the court knows, as true, well-pled facts to be true. I pled that based upon what she said, what the bank security expert told me, who was a federal bank regulator with CVs in the... And the bank let him go in? No, no. We told him about the bank. We told him about the bank. No, we couldn't even get to anything to go into the bank. And so, the well-pled facts, I get responses in this argument in the trial court. They argued on my second motion, not on the outrageous motion, and they never admit that the bank was robbed three times. They never admit that. He hasn't admitted it yet. Maybe he'll admit it today. But under 2-6-15, 2-6-19, he's not admitting. Well, it's pretty clear that this case was decided, at least on the motion to reconsider, on 6-19 exclusivity grounds. I mean, that's what I read that order to me. That's what I saw. That's how I read the argument. So, I mean, really, that's what we're kind of talking about here, is whether it's exclusivity as opposed to the pleading. Of course, pleadings come into play on the exclusivity issue as to whether or not specific intent to harm has been pled. I mean, under Burkhardt and some of these other cases, you must plead a specific or allege that the defendants had a specific intent to harm the plaintiff, unless you're now arguing that because this was a bank and subject to more security measures, that we should come off that standard. A, did you plead that, or B, are you saying we should come off that standard? I'm saying that the specific intent standard is versus the other, that it's most likely to occur.  Substantially. Those two tests are raised in Burkhardt. And this court, like, shifted it and said we're going to go with co-pass and we're going to use the intent test. And because this is a bank, exactly, that what bank director, but what board of directors, what bank security officers is going to say we specifically intended. Well, that's why I said I'm not pleading that they specifically intended. I'm saying they commanded, authorized, as an alter ego, allowed, permitted, knowing that a second and a third bank robbery would occur by not implementing minimum security devices to protect an employee, to protect the public, to protect law enforcement. So you're saying substantial probability should apply to this situation because it's a bank. Even stronger than substantial because the bank security expert in an unreported affidavit, the only affidavit the defendant raises is that she's on workers' comp. She has an active pending workers' comp. It's the only affidavit. And there's nothing rebutting. Well, until they wanted to raise it at this point in time, they certainly could go for summary judgment later. But, so I just want to nail down that you're, that specific, you didn't plead specific intent, but you're arguing that something less than that should apply here. Substantial certainty is what the bank expert basically indicated, did indicate under oath in an affidavit, that if they don't implement minimum security, and there's no one to enforce it. In fact, in the case they cited in Florida, they lied on their forms. And they said law enforcement helped them. They lied. They allowed discovery in that case. They found that the forms were lies. And we never get to the forms. Well, lies would, lies would be intentional, wouldn't they? So that's a slightly different issue than we have here. Well, we don't, the thing is we don't know what the forms say. We don't know, because they're supposed to say every time the bank was robbed, they're supposed to report that. We don't know anything about that. I wasn't allowed to get into that. And I will tell you this. If the bank was robbed once or twice, I said, I doubt that I would file this action, because it's robbed three times in three years. And what I saw and know of the bank, there's something missing in this bank. And I wonder what. And it affected my client. It affects, could have affected the public. And if these people, I don't know how many more banks these people robbed. There's a five-year bank statute, and they're running around out there. And when they run out of money or want more money, who else are they going to think? And so if there were excellent cameras, digital, live feeds, and a solid line of records for the police, the police could have been waiting for them. The Lake County Sheriff, Lindenhurst police, all surrounding areas would have gotten there, about a mile from 132 onto 294. Someone would have gotten there. But because they had, I doubt they had even cameras outside the building where they could have looked at the vehicle, got the plate number. Any other questions? Sir, your time is up. You'll have an opportunity to make rebuttal. Thank you. Thank you. Mr. McAndrew. Good morning. On December 9, 2009, seven days after this incident at the bank, the petitioner, the appellant, Ms. Glasgow, with the assistance of her attorney, Mr. Galesburg, filed her application for adjustment of claim or application for benefits. Since that time, she has received over $47,000 in medical payments and over $16,000 in lost wages. Her attorney is still actively negotiating to resolve this pending workers' compensation claim. The appellant has chosen to obtain compensation under this act, which is designed to provide recovery without proof of fault, an asset she has borrowed from bringing this action against the employer. Filing for and accepting workers' compensation benefits acts as a form of estoppel, denying a plaintiff who has availed herself of the benefits of the act, from thereafter asserting that she falls outside of its reach. What happens if the person injured is not an employee? If she's not an employee, then she does not have a right under the workers' compensation, so she can bring it in civil court. In this case, she clearly was. She had the assistance of counsel to file it. My point is, is that based upon what Mr. Galesburg has said, when is this bank going to wake up and realize that it's looking at a horrendous lawsuit if and when a licensee or an invitee is injured or killed based upon his allegations of violations of various safety? Not that I agree with anything that he said about the minimum standards not being met, but let's just say, as we are agreeing that all these facts are admitted as true, then they have a right or an action in civil court to pursue the bank. But that's not the case here, and although that's what he's alleging, then a customer at the bank could bring an action in civil court and has every right to do so. But in this matter, she was not an invitee. She was an employee who, within seven days, files an application for workers' compensation benefits, which is your sole exclusive remedy, and she does it with the assistance of her own counsel, and she's been benefited, and she continues to benefit from it. I think counsel is inviting us to expand the exceptions to exclusivity broader than specific intent to harm due to the unusual nature of this case, the situs of the injury. And as you pointed out, you need specific intent to do that, and there were certain cases that I cited in my brief that explain, and you can show that specific intent. But as this court explained in Burke Hall, it's very clear that Burke Hall could not show that there was specific intent. Absent showing that there were pizza delivery, I'm sorry, pizza customers lying in wait, and you can use the same application in our matter. Unless they can show specific intent of the bank, that they knew those bank robbers were outside and ready to rob the bank any moment, and you still sent those people in with the so-called minimum standards, you can't show specific intent. This court also explained in Burke Hall that in the cases where an employer cannot be responsible for the acts of a co-employer who assaults another employee, how in the world can you extend that to criminal acts of a third person? And that's the same thought process here. How can you extend it and say, well, we're going to say that the employer specifically intended this to happen for the criminal acts of a third party who came in to rob this bank? You can't show that specific intent. Even with you extending the facts as much as you can here, he cannot show specific intent on part of the bank. What about, I mean, in Burke Hall we didn't have, we had dangerous neighborhoods. I mean, that's not an issue with, I think, Waukegan. You're going to have dangerous neighborhoods. But what about the fact that she brings to the bank's attention that certain things need to be done? Number one, if we're going to assume that that was the case, which I don't know if that truly was, but if it is, I would say that just like in Burke Hall, the plaintiff in that case brought to the attention that they were delivering pizzas to unsafe neighborhoods. They were delivering pizzas to pay phones. They were requesting that there be two-man teams. And very similar to this case, they were asking, he's saying, well, there should have been another security guard. That does not rise to the level of the specific intent or an intentional act. It just doesn't. And as Justice Burke pointed out, in the Copas case, they talk about even if the alleged conduct goes beyond aggravated negligence and includes elements as knowingly permitting a hazardous work condition, knowingly ordering the claimant to perform an extremely dangerous job, willfully failing to furnish a safe place to work, or even willfully unlawfully violating a statute, which is what he's claiming here, this still falls short of the kind of actual intention to injure that robs the injury of that accidental character. Right. Counsel's making a distinction that this is a bank. It is a special place. It's likely over a period of time that you're going to have invitees, you're going to have law enforcement responding to something, certainly you'll have employers or employees, rather. Does this change the situation? I don't think so. I don't know of any case law that puts a bank at a different level in that regard. And he might be able to make that argument, but I don't see any case law that requires it. I still don't understand if he has not crossed that first hurdle to the fact that he's already filed for an and has been compensated for it. Now, in Copass, they talked about the fact that the state, the wife, started receiving payments three days after, and the employer came out and started issuing that without first requesting it. This one, she was represented by counsel. Counsel's sitting right over here. And it was explained that if she starts receiving benefits, that's it. You don't have the right to then claim there's an intentional act. So plaintiff can't even, or appellate can't even cross that. Now, if she can claim there's an intentional act, whether or not she wins, it's something else again. Well, if I understand Collier and Fregal correctly, you can file a workers' compensation claim in order to preserve the statute, but once you start receiving compensation for it, you can no longer pursue an intentional claim. Go ahead. You're saying that the law is that the immunity granted under workings comp doesn't, or pardon me, includes intentional courts? Once you start receiving the payments, yes. Once you start receiving payments. Now, there are examples because they don't want the employers to shield themselves from that liability. But if you're concerned about the statute running, you can file it so you preserve your right to pursue a comp case. Where did you come up with this? Because Coppice didn't seem to say that. These cases seem to carve out a narrow exception to exclusivity where there is a claimed intent to injure. For instance, the case where, I forget the name, but where the boss, the manager, actually punches the worker in the head, that they equated that to the company because it was the boss who punched the worker in the head, that they were able to still sue and tort. Even though they were receiving benefits. I'm citing Coppice, and it says the Supreme Court addressed a similar question for Gow and found the plaintiff's claims for assault and battery against a co-employee were barred because the plaintiff had filed for and accepted workers' compensation benefits from the employer and had a workers' compensation proceeding pending before the commission. That's what I'm basing that upon. And the employer punched? No, that's not that case. If it's a co-employee situation, not a manager, not someone who's acting in the stead of management, just two co-employees going at it, the cases absolutely say that the management had no intent to injure the other person. But I think you're reading that a little broadly. I think there is an exception to exclusivity when you start drawing these payments. If, in fact, the plaintiff can show the specific intent to injure, they can still proceed and tort. The Collier case that you cited seems to say that once they've received the benefits for the injuries, they cannot allege the same injuries as an intentional act. That was my understanding. What if she gives all the money back? I don't think you want to set that standard because then you have a double recovery and you're going to have a proliferation of lawsuits, which is what all these cases talk about. You're trying to cut down on those lawsuits, and instead you would have people filing both. You'd be defeating the whole purpose of the Workers' Compensation Act by then letting them say, okay, well, I'm going to take a swing at this, and then if I can do it, I'll give all the money back. Intentional tort, I think that is being discussed here at least, could be deemed to be a criminal act. And it's always been my understanding that Workmen's Comp immunizes not against criminal acts of intent. It immunizes against non-criminal acts or criminal acts that don't require intent that may be deemed mal and prohibitive. And I don't think it makes any difference whether they accept the benefits under Workmen's Comp if the immunities are deemed to be based upon what the character of the immunity is instead of the quality or the nature and extent of the acceptance of any benefits or claims under Workmen's Comp. Well, it may clearly establish that there is a claim made, an election made, but it doesn't enlarge or diminish the immunities. As Justice Hutchinson pointed out, and it was in the Collier case, it said the Supreme Court held that after accepting Workers' Compensation benefits for the injury on the basis they were compensable under the act, plaintiff could not later allege the same injury was caused by intentional act. And that's what I'm basing it upon. I just don't understand. And who were the people that caused this intentional act? In Collier and Fregalia, both co-employees. One was involved in an incident where they said that the medical nurse did not provide assistance right away after the gentleman had a heart attack. This is a third-party criminal act where a robber comes in and assaults this woman allegedly. So you're extending even more to say that we, this specific intent isn't there then. And just as in Bercow said you can't have co-employees, the employer would be responsible for co-employees unless they specifically ordered those co-employees to assault the plaintiff. How can you do it to these pizza customers? The plaintiff is a corporation, is it not? Yes. And a corporation acts through its agents, does it not? Yes. Now, if a particular agent who has the authority to supervise, hire, fire, and whatever, heats up intentionally this client, the plaintiff, you're telling this court that Workman's Comp, if selected or elected, will preclude civil recovery for an intentional battery? If they elect to start to receive the workers' compensation benefits and start receiving them, then yes, I believe Fregalia and Collier say you can no longer then go and cite intentional acts upon the employer. Okay. Did the plaintiff in Bercow, was that plaintiff receiving benefits? I do not believe, it does not mention in the fact pattern that he was receiving any workers' compensation benefits. As I understand your argument, then, if benefits are accepted, there is complete and total immunity, regardless of intent, malintent, egregious intent. It doesn't make any difference. Whatever injury is covered under Workman's Comp, there can be no lawsuit filed, that will result in any compensatory damage. That's the first part of my argument, and the second argument is even if they cross that hurdle, the plaintiff has not alleged specific intent and cannot prove specific intent upon the bank, just like in Bercow, and therefore, the exclusive remedy applies on that as well. So it's a two-fold, Your Honor. Do you have anything else to add?  Any other questions? No, thank you. Thank you. Thank you very much. Yes, you may, Mr. Galesburg. Thank you. I believe Justice Burke was thinking of the Multac case, where the supervisor had struck the employee, and they were allowed to bring an intentional act against the manager, not a co-employee. And they allowed an action. And as I indicated, there's no double recovery sought at all. It is implied that there's pain and suffering requested that's not covered under the act, and there's any hearing for punitive damages to deter a bank from not implementing security measures in the intentional flexure of emotional distress in a third bank robbery, a fourth bank robbery, whatever. It just keeps going on unless the bank is woken up. An application for claim is handled by their common fund insurance. They never even know about it. They never get it. There's no incentive for them to implement the Lindenhurst branch security measures, none at all. And so those two aspects. And then there would be a credit back, as case law indicates in the Hartford case. It's in a footnote in one of the cases. And then your Burkow, the court's Burkow case does indicate that they allow not accidental, and it was intent, cases of handling John's Manville that you distinguish from your holding in the Burkow case. Does your complaint allege that it alleges things about what happened to her and what she's suffering from, but does it specifically allege that the remedy of workman's comp is not sufficient to cover those issues? Well, I admit that she filed a workman's comp claim. I believe I indicate, at least in my brief, I indicate that worker's comp, when a claim is not, quote, accidental under the four criteria set forth by the Supreme Court, if it's not accidental, and we say it's a not accident, it's not accidental. It's not accidental. It's pled. This is not an accidental injury. Both the bank robbery expert and the plaintiff pled that this is not accidental. And as I believe Justice McLaren brought up, well, what does, what should a bank teller do? Should she decline the benefits of worker's comp that was paid immediately to take care of her and sue and end up in this position fighting and saying she should have filed a worker's comp claim? And that's what employers, in this case, the bank did. They didn't pay benefits because I filed an application. They took her right in and gave her the EAP program, diagnosed her with post-traumatic stress disorder. They paid for medical care under the worker's comp program. And now they're saying- But they didn't just walk out as one of the other cases where the employer walks out before anything's filed and says, here, you need this to get along while you're sick. This is not how this happened. No, this was handled under a specific insurance worker comp carrier. And it was handled, all I did was file the EAP. I didn't file any pleadings. It was done automatically. It was just there to protect her rights under the worker's comp act. And later, like I said, I Googled the bank and found out there were two prior bank robbers. So I think counsel, Mr. McAndrews, concedes that you could file to preserve your time frame, but you could not receive. And the receiving is what's caused the problem. Did your client exit? No, no way. We're going to wait and see what happens? No. I told her, because I've done other cases like this, I told her, for your medical, if you have two minor children, which I've dropped in this case on the second count, you have to take care of yourself. You can't wait until a common law action is filed and see what happens there. You take care of yourself, take care of your family, and get the proper medical care. I didn't believe that there was a bar to bringing a potential tort action. That's what I tell all my clients. This is the first one I've had like this. And to me, it's very unusual, and most people I talk to, including police officers, are not even aware of what a bank is required to do. And you said you've pledged that the, again, Mr. McAndrews says you have not, if you could overcome the first hurdle, you haven't pledged specific intent. But you say you've pledged not accidental. I've pledged not accidental, and I've pledged, I believe I've pledged, that the bank through its, that the bank security officer and the board of directors are 100 percent responsible for bank security measures to the bank library, and they failed, the bank failed to do that. And I filed an amended complaint after it was dismissed, and that was dismissed, trying to amend to the board of directors in the corporate governance and the bank security officer. And that was denied because the judge said it would be the same ruling no matter if you amended it to them or not. And I, and we end up here. That was November 15th of 11, and on 12th, 15th of 11, I filed a notice of appeal. Thank you. Thank you for your time. Thank you. Case under advisement. There are no other cases on call.